## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHELLY POPE,

                             CASE NO. 15-12977

        *Plaintiff*,              DISTRICT JUDGE DENISE PAGE HOOD

*v.*                           MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 16, 18)

## I.      RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Pope is not disabled. Accordingly, **IT IS RECOMMENDED** that Pope's Motion for Summary Judgment (Doc. 16) be **GRANTED**, that the Commissioner's Motion for Summary Judgment (Doc. 18) be **DENIED**, and that this case be **REMANDED for further consideration under Sentence Four of 42 U.S.C. § 405(g)**.

## II.      REPORT

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim under the Disability Insurance Benefits ("DIB") program of

Title II, 42 U.S.C. § 401 *et seq*. (Doc. 3; Tr. 1-3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 16, 18).

Plaintiff Shelly Pope was forty-four years old as of June 1, 2011, her date of alleged disability. (Tr. 142). Her application for benefits was initially denied on March 11, 2013. (Tr. 76-79). Pope requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Earl Ashford on December 14, 2014. (Tr. 37-59). Pope, represented by attorney Karl Bender, testified, as did vocational expert ("VE") Jacquelyn Schabacker. (*Id*.). On May 21, 2014, the ALJ issued a written decision in which he found Pope not disabled. (Tr. 22-33). On July 8, 2015, the Appeals Council denied review. (Tr. 1-3). Pope filed for judicial review of that final decision on August 21, 2015. (Doc. 1).

**B.    Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

2

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . .

3

physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

4

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least 18 years old and has a disability that began before age 22 (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Pope not disabled under the Act. (Tr. 33). The ALJ found at Step One that Pope had not engaged in substantial gainful activity following the alleged onset date, June 1, 2011.[1] (Tr. 27). At Step Two, the ALJ concluded that Pope had the following severe impairments: "fibromyalgia/myalgiac, migraines/headaches, near syncope, and foot disorders (bilateral Achilles tendon tears, plantar fasciitis, osteoarthritis, Haglund's foot deformity, Tailor's bunions, and numbness and tingling of feet." (*Id*.). At Step Three, the ALJ found that Pope's combination of impairments did not meet or equal one of the listed impairments.

---

[1] In her application for DIB, Pope cited June 1, 2011. (Tr. 76-79). However, at the hearing before the ALJ, Pope amended her onset date to January 31, 2013. (Tr. 52). The ALJ applied Pope's earlier alleged onset date, June 1, 2011, in drafting his decision. (Tr. 27). Pope does not challenge this decision in her brief, and has thus waived any argument relating to her onset date. *See Kuhn v. Washtenaw Cnty*., 709 F.3d 612, 624 (6th Cir.2013).

(Tr. 28). The ALJ then found that Pope had the residual functional capacity ("RFC") to perform light work, except with the following limitations:

> [p]ostural limitations of no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling; occasional use of the bilateral lower extremities for operation of foot controls. Environmental limitation to avoid concentrated exposure to hazards, such as moving machinery and unprotected heights. Additional environmental limitation to avoid concentrated exposure to irritants such as fumes, odors, dusts, and gases, extreme cold, extreme heat, humidity, wetness, and vibration.

(Tr. 28-31). At Step Four, the ALJ found that Pope could return to her past relevant work as a packager. (Tr. 31-32). At Step Five, the ALJ concluded that Pope also retained the ability to perform work available in the national economy. (Tr. 32).

### E.   Administrative Record

#### 1.   Medical Evidence

The Court has thoroughly reviewed Pope's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.   Application Reports and Administrative Hearing

##### a.   Pope's Function Report

Pope completed a function report on July 2, 2014, in which she asserted that she suffered from severe fatigue, headaches, stiffness in the feet and legs; pain in the hips, legs, and feet; difficulty bending, lifting and climbing; difficulty concentrating and with memory; along with dizziness and weakness. (Tr. 177). She reported that on certain days

6

she did not get out of bed, and other days she would do laundry, clean, and make dinner. (Tr. 178). She took a pet for short walks when she felt able. (*Id*.). Her husband and daughter took care of chores and the pet when she was unable. (*Id*.). She was unable to walk long distances or stand for greater than five minutes, she slept more than usual, and found it difficult to stand up without assistance after sitting on the floor. (Tr. 178, 184). She found it difficult to sleep due to pain. (Tr. 178). She experienced no problems with personal care. (*Id*.). She required no reminders to perform personal care, but needed reminders regarding when to take ibuprofen for treatment of headaches. (Tr. 179). She could prepare sandwiches and complete meals when feeling well, and did some cooking every day. (*Id*.). She sometimes performed yard work. (*Id*.).

Pope went outside daily, could walk or drive a car, and was able to go outside alone. (Tr. 180). She shopped for groceries weekly for up to two hours. (*Id*.). She had no difficulty handling money. (*Id*.). She enjoyed watching television for five to eight hours daily. (Tr. 181). She communicated with others by phone and made personal visits two to three times per week, though she also reported that she "don't really go places." (*Id*.). She gave up walking with friends and sometimes cancelled attendance at birthday parties because she did not "fe[el] like going." (Tr. 182). She reported difficulty with all postural activities, along with memory and concentration problems, and problems completing tasks. (*Id*.). She could walk for two or three blocks followed by a ten minute break. (*Id*.). She handled written instructions "poorly" and followed spoken instructions "average."

7

(*Id*.). She had no difficulty with authority figures, and had some problems with stress and changes in routine. (Tr. 183).

### b.      Pope's Testimony at the Administrative Hearing

At the May 14, 2014, hearing before the ALJ, Pope testified that she previously worked on an automotive assembly line, where she regularly lifted ten to fifteen pounds, and was ultimately dismissed as the result of attendance issues. (Tr. 42). She admitted to collecting unemployment benefits until the first quarter of 2013, a substantial time following her 2011 alleged onset date. (Tr. 43). This may be the reason why Plaintiff attempted to amend her alleged onset date to January 31, 2013 during the administrative hearing. (Tr. 52). When asked whether she was actually willing and able to work during that time, Pope said that she "didn't know at the time what was wrong" with her, but that even after she was "diagnosed, [she] needed the income, so [she] continued to file" for unemployment benefits." (*Id*.).

Pope asserted that she was disabled from work by fatigue, difficulty sleeping, muscle soreness "all over," difficulty standing for more than five minutes, sitting for more than fifteen or twenty minutes, daily headaches, joint pain, dizziness, numbness in the feet, and tears in the Achilles' tendon. (Tr. 43). She could comfortably walk three or four city blocks before pain set in. (Tr. 44). She had some hand pain which did not limit her hand functioning. (*Id*.). She stated that her rheumatologist recommended she lift no more than ten pounds. (*Id*.). She attested to difficulty bending, stooping, and squatting because of pain and limited mobility. (Tr. 44-45). She slept six or seven hours nightly,

and napped in the daytime only "[s]ometimes." (Tr. 45). Pope did some cooking, and "on good days" performed chores around the house like dusting. (Tr. 46).

Pope's attorney asked why she missed days at work; she confirmed that it resulted from fatigue and difficulty sleeping. (Tr. 46). She said that, despite medicinal treatment, her pain had not improved. (*Id*.). She "stopped trying" to obtain unemployment benefits when she "realized that [the medication] wasn't working." (*Id*.). When working, she missed about two days per week of work due to her pain. (Tr. 50). She experienced numbness and tingling three times per week, lasting perhaps thirty minutes. (Tr. 47). Her pain fluctuated between five and eight out of ten, with three or four days per week at the higher end of the pain scale. (*Id*.). On those days, she "usually don't get up," but rather "lay[s] down all day." (Tr. 48). She took muscle relaxers and amitriptyline for pain and aspirin for headaches. (*Id*.). Her rheumatologist advised her to stay active, but some days found herself too sore to walk. (Tr. 48-49). When standing or walking she experienced "severe heel pain" and tendon pain. (Tr. 49). Pope shopped for groceries weekly with her daughter, who assisted her in lifting groceries so she could "get out fast." (Tr. 50).

Pope stated that she would be unable to work full time because her pain fluctuated day-to-day, and she would frequently be disabled by fatigue and pain. (Tr. 51).

### c.       The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of a VE to determine Pope's ability to perform work. (Tr. 53). The VE characterized Pope's past work as a packager as

unskilled work requiring medium physical exertion.[2] (Tr. 54). The ALJ asked the VE to assume a hypothetical individual with Pope's age, education, and work experience, and who was limited to light work, but who could perform

> no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling; occasional use of the bilateral lower extremities for operation of foot controls. Environmental limitation to avoid concentrated exposure to hazards, such as moving machinery and unprotected heights. Additional environmental limitation to avoid concentrated exposure to irritants such as fumes, odors, dust, and gases, extreme cold, extreme heat, humidity, wetness, and vibrations.

(Tr. 54-55). The VE found that such a worker could perform Pope's past relevant work as a packer as performed, but not as a production assembler. (Tr. 55). The VE further concluded that such a worker could perform other work available in the national economy, including mail routing clerk (30,000 jobs nationally), photocopy machine operator, (70,000 jobs), and cafeteria attendant (150,000 jobs). (Tr. 55).

The ALJ then asked a second hypothetical question which included the prior restrictions, but which limited the hypothetical to sedentary level work. (Tr. 71). The VE found that such a worker could still perform work as a surveillance system monitor

---

[2] The VE later characterized Pope's work as "both the job of production assembler . . . and packager." (Tr. 54). It is unclear whether the VE found that Pope's past work could be characterized as *either* a packager or production assembler, or whether she found that Pope performed a composite position. *See Hansen v. Comm'r of Soc. Sec.*, No. 13-13348, 2014 WL 5307133, at *8 (E.D. Mich. Oct. 16, 2014) (discussing composite positions and noting that a claimant is capable of returning to a past relevant combination position only if he or she can perform each of the separate components of that position). As discussed below, this issue is ultimately irrelevant because the ALJ found that Pope could return to her past relevant work and could perform a number of jobs available in the national economy.

10

(31,000 jobs), document addresser (25,000 jobs), and unskilled inspector (50,000 jobs). (Tr. 56).

The ALJ then asked a third hypothetical, which duplicated the second hypothetical except that the worker would also be allowed to stand or sit at will, would be allowed four extra breaks per workday, would be consistently absent more than four days per month, along with stress-related and other postural limitations. (Tr. 57). As expected, the VE found that this extreme set of limitations precluded all competitive work.

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a

11

multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ

12

"will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's

13

credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective

14

evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

    (i)    [D]aily activities;
    (ii)   The location, duration, frequency, and intensity of . . . pain;
    (iii)  Precipitating and aggravating factors;
    (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
    (v)   Treatment, other than medication, . . . received for relief of . . . pain;
    (vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

       The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.     Analysis

Pope argues that the ALJ erred in the following ways: 1) Crafting an RFC not supported by the medical evidence; and 2) Erroneously assigning little weight to Dr. Malani's opinion despite its consistency with other evidence. (Doc. 16 at 8-13). These arguments will be addressed in turn.

#### 1.     *The ALJ's RFC Finding is Not Supported by Substantial Evidence*

Pope first argues that the ALJ's RFC finding is not supported by substantial evidence. (Doc. 16 at 8-10). She cites the opinion of consultative agency physician Dr. Alexander Lund, which the ALJ gave great weight, but which she asserts the ALJ failed to incorporate into his decision. (Doc. 16 at 8). She notes that Dr. Lund found she was not capable of stooping, kneeling, crouching, or crawling; could only stand up to ten minutes at a time, sit for only thirty minutes at a time, and walk for only thirty minutes at a time; could frequently carry up to ten pounds, and occasionally up to twenty pounds, but never more than twenty pounds. (*Id*.).

The ALJ's RFC finding indeed departs from Dr. Lund's proposed restrictions in several ways. First, the ALJ found that Pope could stoop, kneel, crouch and crawl occasionally, an increase from Dr. Lund's opinion that she could "never" perform those activities. (Tr. 28, 309). This discrepancy, while worrisome at first glance, is ultimately harmless. In addition to finding that Pope could return to her past relevant work, the ALJ concluded that she could perform several other jobs, including routing clerk, photo copy machine operator, and cafeteria attendant. (Tr. 32). The Commissioner aptly notes that

16

two of those positions, routing clerk and copy machine operator, do not require any stooping, kneeling, crouching, or crawling. (Doc. 18 at 10; 222.587-038 ROUTER, DICOT 222.587-038; 207.685-014 PHOTOCOPYING-MACHINE OPERATOR, DICOT 207.685-014). By finding that Pope could perform jobs which do not require any stooping, kneeling, crouching, or crawling, the ALJ effectively adopted and applied Dr. Lund's conclusion that Pope cannot perform those activities. Thus, even if the case was remanded, and the ALJ modified his RFC finding to fully comport with Dr. Lund's opinion on stooping, kneeling, crouching, and crawling, the outcome would be the same: Pope would be found not disabled because she can perform work as a routing clerk and photo copy machine operator. Consequently, insofar as the ALJ may have erred in not adopting Dr. Lund's findings on the issues of stooping, kneeling, crouching, and crawling, that error was harmless. *See Keels v. Comm'r of Soc. Sec.*, No. 14-12057, 2015 WL 3843552, at *2 (E.D. Mich. June 22, 2015) ("[T]he Commissioner made a finding consistent with the treating physician's opinion that Plaintiff cannot perform a job that requires kneeling . . . . Therefore, even if the ALJ had adopted Plaintiffs' treating physician's no-kneeling recommendation, the ALJ's ultimate conclusion at Step Five likely would have been the same. Thus, this Court finds that the ALJ's error, if any, is harmless, and remand is not warranted."); *see also Ferrell v. Comm'r of Soc. Sec.*, No. 1:14-CV-1232, 2016 WL 316724, at *7 (W.D. Mich. Jan. 27, 2016) ("The Court finds the error here to be harmless because the DOT descriptions for the positions identified in

support of the Commissioner's step 5 finding do not require the postural abilities that the ALJ found Plaintiff had limitations in doing.").

Pope next argues that the ALJ's RFC finding was *more* restrictive than that issued by Dr. Lund, insofar as the ALJ found that she could only occasionally use foot controls, while Dr. Lund provided for no restrictions to the use of foot controls. (Doc. 16 at 8-9; Tr. 28, 309). This discrepancy benefits Pope's claim for disability, thus even if the ALJ's decision could be characterized as error, it would be harmless to Pope's claim for benefits. *See Gordon v. Comm'r of Soc. Sec.*, No. 1:14 CV 92, 2015 WL 1040180, at *4 (N.D. Ohio Mar. 10, 2015) ("[T]he RFC in this case is actually more restrictive than the expert medical opinions might otherwise require, and so [the plaintiff's] argument that the ALJ somehow committed reversible error in this regard is not well taken.").

Pope also asserts that the ALJ found that she was capable of work at the light level of exertion, whereas both Dr. Lund and Dr. Malani found that she was capable of standing for less than ten minutes at a time, and one hour total per workday. (Doc. 16 at 9; Tr. 28, 300, 309). While the "full range" of light work requires the ability to stand for six hours in an eight-hour workday, a claimant may be able to perform light work where he or she retains the ability to "sit[] most of the time but with some pushing and pulling of arm-hand or leg-foot controls." *See* SSR 83-10 (S.S.A. 1983). The Commissioner thus concludes that Dr. Lund's proposed walking restrictions would not preclude Pope's performance of light work. (Doc. 18 at 11). Alternately, the Commissioner asserts that,

where an ALJ gives great weight to a physician's opinion, the ALJ is not required to explain why portions of that opinion are not included in the RFC.

Courts have taken several different approaches to the circumstance where an ALJ purports to give great weight to a physician's opinion, but then fails to fully incorporate that opinion into the RFC finding. Finding no Sixth Circuit precedent or district court consensus on this issue, the Court will review some relevant cases and attempt to draw out a reasonable rule.

Some courts have concluded that ALJs are not required to address portions of a physician's opinion which are contrary to the RFC finding, even where the ALJ gives that physician's opinion great weight. *See Smith v. Comm'r of Soc. Sec.*, No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."), aff'd (Jan. 30, 2014). This analysis appears to grow out of the well-established principles that an ALJ is not required to consider every piece of medical evidence in the opinion, *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010), and that the RFC finding is expressly reserved to the commissioner, *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013).

Other courts have eschewed this deferential model of review, and have instead required that, where an ALJ gives great weight to a physician's opinion, but does not incorporate all of the physician's proposed limitations in the RFC finding, the ALJ must

19

explain why he has jettisoned those unincorporated limitations. *See Gonzalez v. Colvin*, No. 1:13-CV-01358, 2014 WL 1333713, at *7 (N.D. Ohio Mar. 28, 2014) ("However, where the opinion of a medical source contradicts her RFC finding, an ALJ must explain why she did not include its limitations in her determination of a claimant's RFC."); *Postell v. Comm'r of Soc. Sec.*, No. 6:13-CV-313-ORL-GJK, 2014 WL 793328, at *2 (M.D. Fla. Feb. 27, 2014) ("Having given great weight to Dr. Narula's opinions, the ALJ should have provided a reasoned explanation as to why his RFC determination did not include or otherwise account for Dr. Narula's opinions concerning Claimant's ability to stand and walk for prolonged periods and throughout an eight (8) hour workday."); *Campbell v. Colvin*, No. 3:13-CV-58, 2013 WL 3992597, at *10 (N.D. Ohio Aug. 5, 2013) (holding that an ALJ's provision of great weight to a physician's opinion obligated the ALJ to explain why he did not include in the RFC finding all of the limitations proposed by that physician). This model well comports with SSR 96-8p, which provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See Woodruff v. Astrue*, No. 1:12-CV-1752, 2013 WL 821336, at *10 (N.D. Ohio Mar. 5, 2013) (The requirement of Ruling 96–8p is clear: an ALJ must explain his decision not to adopt a medical source opinion that conflicts with his RFC. Here, despite granting Dr. Renneker's opinion great weight, the ALJ did not include limits on Plaintiff's ability to sustain neck flexion in his calculation of her RFC. Because these limitations conflict with the RFC—as the RFC contains no limits on these activities—SSR 96–8p requires the ALJ to explain their

omission. A review of the ALJ's decision reveals that he did not explain his reasons for rejecting these limitations.").

Holding the ALJ to so light a standard as pronounced in the first set of cases discussed effectively deprives the court of the ability to "conduct a meaningful review of the ALJ's decision to not include or otherwise account for limitations to which he otherwise gave great weight." *Postell v. Comm'r of Soc. Sec.*, No. 6:13-CV-313-ORL-GJK, 2014 WL 793328, at *2 (M.D. Fla. Feb. 27, 2014). Without an explanation of *why* the ALJ gave great weight to a physician's opinion, but discarded portions of it in rendering the RFC finding, the courts must simply assume that the ALJ supported his decision with substantial evidence. As to why the ALJ discarded Dr. Lund's walking and standing limitations, the reader can only guess. This is not a robust foundation for judicial review.

The Court finds that the ALJ's error here is analogous to that considered in *Washington-Fisk v. Comm'r of Soc. Sec.*, No. 2:11-CV-15117, 2012 WL 4007831, at *10 (E.D. Mich. Aug. 17, 2012), report and recommendation adopted, No. 11-15117, 2012 WL 4017460 (E.D. Mich. Sept. 12, 2012). In that case, the ALJ purportedly gave great weight to an examining agency physician's opinion, but nevertheless failed to incorporate that physician's restriction to a job which "does not require any walking or lifting" into the RFC finding. *Id.* at 8. Then-Magistrate Judge Laurie Michelson found that the ALJ adopted the favorable portion of the agency-physician's opinion, *i.e.* that the claimant could perform sedentary work, but silently rejected the coextensive limitations, *i.e.* that

21

the claimant required a job that involved no walking or lifting, and thus failed to provide the necessary logical bridge between the evidence and the conclusion. *Id.*

In this case, the ALJ made no effort to incorporate into his RFC finding Dr. Lund's conclusion that Pope could stand for only ten minutes at a time and one hour per day, and that she could walk thirty minutes at a time and three hours per day. (Tr. 310). Instead, the ALJ merely queried the VE as to whether a hypothetical worker limited to "light work" and with certain other postural restrictions could perform jobs available in substantial numbers in the national economy. (Tr. 28). The VE was thus not informed of Pope's specific standing and walking limitations which would have limited her to a subset of light work. The DOT listings for routing clerk and photocopy machine operator do not provide specific criteria regarding the amount of sitting and walking those jobs require, thus the Court cannot find that this error is harmless by way of effectively incorporating Dr. Lund's findings. *See* 222.587-038 ROUTER, DICOT 222.587-038; 207.685-014 PHOTOCOPYING-MACHINE OPERATOR, DICOT 207.685-014.

An ALJ's finding that the claimant is not disabled draws no support from a VE's testimony where that testimony is based on an inaccurate or incomplete hypothetical question. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009). The record here contains no VE testimony regarding the availability of jobs for someone who is limited in terms of standing and walking as Dr. Lund concluded, and the ALJ provides no explanation for why these limitations, found in similar degree by both the agency physician and Pope's rheumatologist, were not included in the RFC finding. The ALJ's

22

decision is fundamentally unfair where he purportedly adopted Dr. Lund's opinion in full, but ignores major portions of his opinion that would benefit Pope's claim for disability. At a minimum, the omission of Dr. Lund's walking restriction should have been explained by the ALJ, with appropriate reference to medical evidence which might support excluding this restriction.

### 2. *The ALJ Sufficiently Supported His Decision to Grant Little Weight to Dr. Malani's Opinion*

Pope also argues that the ALJ erred by assigning less weight to the opinion of Dr. Angela Malani. (Doc. 16 at 11). The ALJ found that Pope's four visits to Dr. Malani over the course of thirteen months undercut her allegations of disabling pain. (Tr. 29). Pope argues that her infrequent visits were the result of Dr. Malani's policy of not treating fibromyalgia on a regular basis in her clinic, and that Dr. Malani suggested that Pope follow up with her primary care physician for fibromyalgia related symptoms. (Doc. 16 at 11). Yet, as the Commissioner points out, Pope does not appear to have regularly followed up with her primary care physician, visiting only twice between the issuance of Dr. Malani's opinion and the administrative hearing. (Doc. 18 at 16). Pope argues that the Commissioner is erroneously focusing on her treatment with subsequent physicians, which has no impact on the credibility of Dr. Malani's opinion.

Looking to the Code of Federal Regulations, the Commissioner is directed to give greater weight to physician opinions which: 1) are the product of an examination; 2) are produced by a "treating source," including consideration of the length of the treating

relationship and the kinds and extent of treatment; 3) are supportable in terms of evidence and explanations provided; 4) are consistent with the record as a whole; 5) are produced by a specialized physician. 20 C.F.R. § 416.927. The parties focus almost exclusively on factor two, and in particular on whether Pope treated with Dr. Malani a sufficient number of times.

Pope first treated with Dr. Malani in December 2011, wherein she was prescribed Elavil for treatment of fibromyalgia and instructed to follow-up in two months. (Tr. 279-80). In January 2012 Dr. Malani noted that Pope did not take Elavil for fear of side effects; Dr. Malani strongly encouraged Pope to take Elavil, and instructed her to follow-up in two months. (Tr. 278). In March 2012 Dr. Malani wrote that Pope ceased use of Elavil after experiencing sleep issues without any apparent benefit in terms of pain relief; Pope stated that she was "not interested in any other medications at this time," and would continue with non-medicinal treatment like exercise, and would follow-up as needed. (Tr. 277). In January 2013 Pope requested that Dr. Malani provide an "as needed medication" for the treatment of fibromyalgia following the failure of non-medicinal treatment. (Tr. 324). In January 2014 Dr. Malani drafted her medical source statement, wherein she concluded that Pope was severely limited by chronic pain resulting from fibromyalgia, including a limitation to standing for five minutes at a time; a limitation to stand, sitting, and walking less than two hours daily; never lifting more than ten pounds; being off task for approximately one quarter of each work day; and missing more than four days of work per month. (Tr. 299-302).

24

There is nothing particularly offensive about the concept of a patient treating with a physician only four times over thirteen months. In the case that the ailment is sufficiently well managed by treatment, or cannot be more effectively treated, monthly return visits would be all but fruitless. The Court finds more disconcerting the relatively limited nature of Dr. Malani's notes. Dr. Malani's earlier treatment notes are mostly comprised of recitations of Pope's complaints of pain, with little indication that Pope was disabled from any activity by her pain. (Tr. 277-80, 292-93, 320-24). By comparison, in her source statement Dr. Malani assessed a variety of extremely strict work conditions which would, if adopted, effectively preclude Pope from competitive work. (Tr. 300-02). The ALJ's notation that Dr. Malani's "opinion is inconsistent with her treatment records" sufficiently encompasses this reasoning. Thus, while Pope's limited number of treatment sessions with Dr. Malani does not significantly undercut the value of Dr. Malani's opinion, the nevertheless ALJ provided good reasons for giving little weight to her opinion. In particular, the Court finds that the very limited nature of Dr. Malani's treatment notes provide little support for her highly restrictive source statement, thus degrading the merit of her opinion. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112 (6th Cir. 2010) (holding that the value of a physician's opinion is undercut where the physician's treatment notes do not support the physician's opinion).

Pope also takes issue with the ALJ's characterization of Dr. Malani as having expressed some uncertainty about whether Pope was suffering from fibromyalgia or some other disorder; that Dr. Malani's opinion contained disorders not listed in the treatment

25

notes; that Dr. Malani prescribed medication on an as-needed basis only; and that Pope was not referred to a psychiatrist. (Doc. 16 at 11-13). The ALJ's decision gains little from these arguments, which range from the repetitive (*i.e.* noting that Dr. Malani's opinion is more thorough than her treatment notes) to the less than persuasive (*i.e.* asserting that Pope's credibility on the issue of pain is undercut by the fact that she was not referred to a psychiatrist). Nevertheless, the Court identified above a "good reason" for upholding the ALJ's assignment of weight to Dr. Malani's opinion, thus the ALJ's finding on that issue should be upheld. The ALJ's provision of several weak arguments for giving little weight to Dr. Malani's opinion does not undermine his "good reason" for giving her opinion little weight.

While the ALJ did not err in giving little weight to the opinion of Dr. Malani, he committed reversible error by purporting to give great weight to the opinion of examining agency physician Dr. Lund, but failing to explain why he did not incorporate portions of that physician's opinion in the RFC finding.

###    H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Pope's Motion for Summary Judgment (Doc. 16) be **GRANTED**, the Commissioner's Motion (Doc. 18) be **DENIED**, and that this case be **REMANDED for further consideration under Sentence Four of 42 U.S.C. § 405(g)**.

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection

No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 19, 2016                                     S/ PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: May 19, 2016                                    By s/Kristen Krawczyk
                                                      Case Manager

28