## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SHELLY POPE,

                                       CASE NO. 15-12977

        *Plaintiff*,                   DISTRICT JUDGE DENISE P. HOOD

*v.*                              MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION FOR ATTORNEY'S FEES UNDER THE EAJA (Doc. 23)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** Pope's motion for attorney's fees (Doc. 23) be **GRANTED IN PART AND DENIED IN PART**, such that Plaintiff's attorney be awarded $2487.50 in fees under the EAJA.

## II.    REPORT

### A.    Introduction and Background

Pursuant to an order of reference from United States District Judge Denise Hood, before the Court is Plaintiff Shelly Pope's motion for attorney's fees under 28 U.S.C. § 2412, better known as the Equal Access to Justice Act ("EAJA"). (Docs. 23, 24).

Pope is represented by attorney Jacob Bender. Pope applied for benefits under the Disability Insurance Benefits program of Title II, 42 U.S.C. § 401 *et seq*. in March 2013, alleging on onset date of June 1, 2011. (Tr. 76-79, 142). Pope's application was denied at the initial level, by an Administrative Law Judge ("ALJ"), and by the Appeals Council. (Tr. 1-3, 37-59). Pope then filed for judicial review of her claims on August 21, 2015. (Doc. 1).

The parties filed cross motions for summary judgment. (Docs. 16, 18). The undersigned then issued a report and recommendation in which I suggested that the matter be remanded to the Commissioner for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). (Doc. 20). Neither party objected. On July 29, 2016, District Judge Hood adopted my recommendation. (Doc. 21).

On September 26, 2016, Pope filed a motion for attorney's fees under the EAJA. (Doc. 23). On October 7, 2016, the Commissioner filed a response (Doc. 25), and on October 21, 2016, Pope filed a reply (Doc. 27). Pope's motion is therefore ready for determination.

### B.    Analysis

#### i.    Attorney's Fees in Social Security Cases Generally

Pope moves for attorney's fees under the EAJA. (Doc. 23). Attorneys in Social Security benefits cases may collect fees through two statutes: the EAJA, and 42 U.S.C. § 406. Fees collected under the EAJA are paid by the Commissioner out of its own coffers, whereas fees collected under § 406 are paid out of the claimant's past due benefits. *See Scappino v. Comm'r of Soc. Sec. Admin.*, No. 1:12-CV-02694, 2015 WL 7756155, at *3 (N.D. Ohio Dec. 1, 2015). Fees may be collected under the EAJA only where the Commissioner's position was not "substantially justified," and thus operates to "discourage the government from taking unjustified positions." *Jones v. Schweiker*, 565 F. Supp. 52, 55 (W.D. Mich. 1983).

#### ii.    Standard for Obtaining EAJA Fees

Where a court renders a judgment favorable to a Social Security claimant who was represented by counsel, the court may allocate to that counsel a "reasonable" fee for such representation. 28 U.S.C. § 2412(b). An application for attorney's fees under the EAJA,

including an itemized justification for the amount requested, must be filed within thirty days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). In addition, the claimant must be an eligible party, *i.e.* one "whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).

Three additional conditions must be met in order to recover attorney's fees under the EAJA: (1) the claimant must be a prevailing party; (2) the government's position must be without substantial justification; and (3) there must be no special circumstances which would warrant a denial of fees. *See Ratliff v. Commissioner of Soc. Sec.*, 465 F. App'x 459, 460 (6th Cir. 2012); *Marshall v. Commissioner*, 444 F.3d 837, 840 (6th Cir. 2006).

### iii.    Pope is Eligible to Collect EAJA Fees

Pope obtained a Sentence Four remand, thus it is clear that she is a prevailing party in this matter. *See Turner v. Comm'r of Soc. Sec.*, 680 F.3d 721, 723 (6th Cir. 2012); (Docs. 20, 21). Pope submits that her net worth does not exceed two million dollars, and the Commissioner does not challenge this assertion. (Doc. 23 at 10). Pope's motion also properly contains an itemized list of the amount expended. Pope thus satisfies all of the prerequisite criteria for obtaining EAJA fees. (*Id*. at 8-9). The Commissioner does not contend that any "special circumstances" exist in this case which would merit denial of fees. (Doc. 25 at 2).

### iv.    The Commissioner Was Not Substantially Justified

The only significant challenge in this matter is determining whether the Commissioner's defense of the ALJ's decision, *i.e.* the Commissioner's "position" was substantially justified. The allegation that the government's position was substantially justified "imposes no proof burden on the fee applicant, but is simply an allegation or pleading requirement." *Scarborough*

*v. Principi*, 541 U.S. 401, 414–15 (2004). That allegation "functions to shift the burden to the Government to prove that its position in the underlying litigation 'was substantially justified.'" *Id*.

The Commissioner's "position" includes both its underlying action and its litigation position. 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(D). *See also Noble v. Barnhart*, 230 F. App'x 517, 519 (6th Cir. 2007); *Delta Eng'g v. United States*, 41 F.3d 259, 261 (6th Cir. 1994). The government's loss raises no presumption that its position was not substantially justified. *See United States v. Real Property Located at 2323 Charms Road*, 946 F.2d 437, 440 (6th Cir. 1991).

In *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) the Supreme Court took pains to define "substantial justification." The Court rejected the demanding interpretation of "justified to a high degree," and approved formulations such as "[existence of] a genuine dispute," "if reasonable people could differ as to [the appropriateness of the contested action]," "justified to a degree that could satisfy a reasonable person," and "reasonable basis both in law and fact." *Id.* at 565. The Court specifically rejected legislative history suggesting that "the test must be more than mere reasonableness." *Id.* at 566 (quoting H.R. Rep. No. 99-120, at 9 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 138).

Under these standards, the failure of the government to entirely prevail in this case does not in and of itself constitute a lack of substantial justification for its position. *See United States v. Yoffe*, 775 F.2d 447 (1st Cir. 1985). "Congress did not . . . want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case . . . .'" *Scarborough v. Principi,* 541 U.S. 401, 415 (2004) (quoting *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003)). Thus, the lack of

4

substantial evidence supporting the Commissioner's position does not mean the decision lacked substantial justification for purposes of attorney fee awards under the EAJA. *See Hull v. Bowen*, 748 F. Supp. 514 (N.D. Ohio 1990).

Moreover, the ALJ's failure to articulate her reasoning or explain the evidence "does not automatically mean the Commissioner's decision to defend the ALJ's decision to deny benefits was unreasonable," and thus unjustified. *Anderson v. Comm'r of Soc. Sec.*, 198 F.3d 244, 1999 WL 1045072, at *4 (6th Cir. Nov. 12, 1999) (unpublished table decision). Thus, fees are not automatically awarded where the remand resulted from the ALJ's failure to articulate the analysis rather than, for example, the "overwhelming evidence of disability." *Kinsora v. Comm'r of Soc. Sec.*, No. 09-11507, 2011 WL 2173909, at *4 (E.D. Mich. Apr. 18, 2011), report and recommendation adopted by 2011 WL 2173829, at *1 (E.D. Mich. June 2, 2011). A cursory analysis of an important issue "usually will not be enough to poison the opinion–or the commissioner's defense of the opinion." *Bassett v. Astrue*, 641 F.3d 857, 859 (7th Cir. 2011). "[I]t typically takes something more egregious than just a run-of-the-mill error in articulation to make the commissioner's position unjustified–something like the ALJ's ignoring or mischaracterizing a significant body of evidence, or the commissioner's defending the ALJ's opinion on a forbidden basis." *Id.*

In determining a prevailing claimant's entitlement to EAJA fees, the "clarity of existing law is an important factor in determining whether the position of the Commissioner was substantially justified." *Spruil v. Bowen*, 691 F. Supp. 302 (M.D. Fla. 1988). Also, where the evidence is equivocal or highly disputed, the Commissioner's position is more likely to be substantially justified within the meaning of the EAJA. *See Gowen v. Bowen*, 855 F.2d 613 (8th

Cir. 1988); *Andrews v. Bowen*, 848 F.2d 98 (7th Cir. 1988). The Commissioner's failure to follow applicable regulations undermines her justification and entitles a plaintiff's counsel to an EAJA attorney fee award. *See Hudson v. Sec'y of Health & Human Servs.*, 839 F.2d 1453 (11th Cir. 1988). Similarly, the failure of the Commissioner to follow clearly established circuit court precedent renders the Commissioner's position not substantially justified. *See Fraction v. Bowen*, 859 F.2d 574 (8th Cir. 1988). However, the Commissioner's position can be substantially justified despite "deficiencies in the ALJ's analysis of the treating physician's opinion" where the evidence sheds sufficient doubt on the plaintiff's disability. *Ratliff*, 465 F. App'x at 460 (citing *Anderson*, 1999 WL 1045072, at *4).

The Commissioner's primary argument here is that her position was necessarily justified where the Court's remand order was premised on a developing point of law. In my report and recommendation I found that the ALJ erred by giving "great weight" to the opinion of Dr. Lund, who found that Pope was unable to stand for more than ten minutes at a time and one hour daily, while simultaneously concluding in the RFC that Pope could perform "light" work, which would entail substantially more standing than Dr. Lund found possible. (Doc. 20 at 18-19). I concluded that the ALJ failed to explain how he dovetailed these apparently contradictory findings, and in so doing made meaningful review of the decision impossible. (*Id.* at 20). However, I noted that there was "no Sixth Circuit precedent or district court consensus" on the issue of whether an ALJ must explain discrepancies between a physician's opinion given "great weight" and an apparently contradictory RFC finding. (*Id.* at 19). I considered *Smith v. Comm'r of Soc. Sec.*, No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013), which concluded that ALJs are under no obligation to explain such contradictions, and compared the decision to

6

several district court cases from around the circuit and nation which reached contrary decisions. (*Id*. at 19-22). Having determined that the application of the reasoning in *Smith* would hold the ALJ to too light a standard and preclude meaningful judicial review of the ALJ's decision, I recommended that the ALJ's decision be remanded for further proceedings to clarify the apparent contradiction between Dr. Lund's opinion and the ALJ's RFC. (*Id*. at 22-23).

In light of the Court's finding that the area of law described above remains unsettled, the Commissioner argues that she was substantially justified in taking the position favored in *Smith*, even though it was not adopted by the undersigned. (Doc. 25 at 3-5). The Commissioner further notes that a district judge in this Court issued a decision just a few weeks later in which the rule of *Smith*, *i.e.* that the ALJ is not under an obligation to explain discrepancies between a physician's opinion given great weight and an apparently contradictory RFC finding, was adopted. *See Price v. Comm'r of Soc. Sec.*, No. 14-13662, 2016 WL 3193025, at *1-2 (E.D. Mich. June 9, 2016) (Murphy, J.). The Commissioner is quite correct that, where presented with a largely uncharted principle of law, and upon which courts around the circuit and nation have reached varying conclusions, the Commissioner's decision to defend one side over another is surely "substantially justified."

Pope reasons that the Commissioner's defense of the *Smith* rule is a side issue, and that the Court should focus on the Commissioner's defense of the ALJ's factually unsupported RFC finding. (Doc. 23 at 4; Doc. 27 at 3-6). She asserts that the ALJ "completely failed to incorporate some [of] the consulting examiner's more significant conclusions into his RFC, despite assigning his opinion 'great weight.' As a result, the hypothetical posed to the vocational expert was without support from the record." (Doc. 23 at 4). She asserts that RFC was "almost completely

7

at odds with Plaintiff's medical records," where the ALJ found Pope capable of light work, despite findings from Dr. Lund (a physician employed by the Commissioner) that Pope could never stoop, kneel, crouch, or crawl, could stand for only ten minutes at a time, sit for only thirty minutes at a time, and walk for only thirty minutes at a time, and similar conclusions drawn by Pope's physician Dr. Malani. (Doc. 27 at 2).

Pope analogizes her case to *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004), where it was found that the ALJ "selectively considered the evidence in denying benefits," thus the Commissioner's defense of the same was not substantially justified. She argues that the question of whether to apply *Smith* was "not the reason the ALJ denied Plaintiff her disability benefits, and this was not cited by the Appeals Council . . . as to why it upheld the denial." (Doc. 27 at 3).

The Commissioner cites *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 727 (6th Cir. 2014), wherein the Sixth Circuit held that an

> ALJ's failure to provide an adequate explanation for his findings does not establish that a denial of benefits lacked substantial justification. A fully justified position may be poorly explained, and remand may be the most appropriate vehicle for elucidating that position. Thus, although remand on any ground theoretically may support an award of fees under the EAJA, such an award is not appropriate when nothing about the specific remand at issue implies a lack of substantial justification.

Nevertheless, the language of the EAJA itself makes clear that the Court may not focus solely upon the specific issues which led to remand, but must also consider the justification of the "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

The Commissioner aptly notes that the undersigned did not recommend remand for benefits in this case, but rather recommended remand for further consideration under Sentence Four of 42 U.S.C. § 405(g). (Doc. 20 at 26; Doc. 25 at 5). Remand for an award of benefits is

appropriate where "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The undersigned did not remand for benefits in this case because the ALJ's justification for "discard[ing] Dr. Lund's walking and standing limitations," left the reader to "guess" at potential justifications for silently rejecting these particular limitations while purporting to give great weight to that physician's opinion as a whole. (Doc. 20 at 21). I did not conclude that the ALJ's RFC could not be justified on the facts before the Court, but rather concluded that the contradiction in the ALJ's decision was left unexplained, and thus did not provide a "robust foundation for judicial review." (*Id*.). I further held that "the omission of Dr. Lund's walking restriction should have been explained by the ALJ, with appropriate reference to medical evidence which might support excluding this restriction." (*Id*. at 23). The ALJ's failure to specify his reasons for rejecting portions of Dr. Lund's opinion thus does not inexorably drive towards the conclusion that Pope is in fact disabled. Even had the ALJ properly accounted for the nuances of Dr. Lund's opinion in his RFC finding, Pope might nevertheless be able to perform a reduced range of light work, or perhaps sedentary work, in numbers which would nevertheless render her not disabled under the law. Remand for benefits was thus inappropriate.

Determining whether the Commissioner was justified in defending the ALJ's decision from the outset requires the Court to speculate as to whether the ALJ's RFC finding could be justified based on the evidence of record. While the ALJ in this case failed to explain the discrepancies between his RFC finding and Dr. Lund's opinion, this error would have been

harmless (and the ALJ's decision defensible) if the ALJ's decision (and in particular his RFC finding) was nevertheless supported by substantial evidence. *See Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004). Indeed, the Commissioner in this case argued that the ALJ's mistake in this case was, at most, harmless error because the ALJ's "conclusion that [Pope] could perform light work is supported by substantial evidence." (Doc. 18 at 12). Notably, the Commissioner did not explain precisely *how* Pope's ability to perform light work was supported by substantial evidence, aside from noting that in Pope's most recent medical record she was found to be

> healthy-appearing; was in no acute distress; was ambulating normally; had normal motor strength and muscle tone; had no tenderness in her bones, joints and muscles; and had normal movement of all extremities . . . . Her fibromyalgia was stable on Flexeril, and Dr. Malani felt that she would not need to return for a year . . . . None of this bespeaks one who is incapable of performing the undemanding physical tasks associated with light work, much less one who is totally disabled.

(Doc. 18 at 12). This single medical record was insufficient to overturn the substantial longitudinal record of ailments found by Drs. Lund and Malani. Notably, the Commissioner did not suggest that Pope's activities of daily living were consistent with light work, because they were inconsistent with that level of sustained activity. Likewise, she did not cite to any physician who opined that Pope could sit, stand, or walk to the degree necessary to perform light work, because no physician in the record rendered such an opinion. The undersigned concluded that the ALJ's error was not harmless, because that the jobs identified by the vocational expert, *i.e.* router and photocopying-machine operator, did not include sufficient information in their Dictionary of Occupational Titles description to determine whether those positions could be performed by someone limited to standing for only ten minutes at a time and one hour per day, and to walking for thirty minutes at a time and three hours per day. (Doc. 20 at 22). Neither the

Commissioner nor the Court could find any justification for finding the ALJ's error harmless, and I see no reason to depart from that conclusion now.

Therefore, the Commissioner has already had a chance to convince the Court that the ALJ's error in this case was harmless, and was unable to turn up alternative justifications for the ALJ's decision sufficient to reach that mark. The ALJ's finding that Pope could perform light work flew in the face of the opinions rendered by both of the physicians to opine on the subject, drew no support from Pope's testimony or function report, and appears to be the result of the ALJ's ungrounded speculation. The Commissioner thus chose to defend the ALJ's decision even though the ALJ's conclusion that Pope could perform light work was not well supported. I therefore conclude that the Commissioner's decision to defend the ALJ's decision was not substantially justified, and EAJA fees should issue. The Commissioner cannot be maligned for choosing to advocate for the rule applied in *Smith* and *Price*, but this choice is wholly independent from the Commissioner's decision to defend the ALJ's decision despite the lack of evidence in support of the ALJ's finding regarding light work, and it is the latter choice which renders her position less than substantially justified.

### v.    The Amount and Rate of EAJA Fees to be Paid

EAJA fees must be "reasonable." 28 U.S.C. § 2412(b). The EAJA provides that "fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited

availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

Pope's attorney alleges that he expended 18.85 hours of attorney time and 1.75 hours of legal assistant time in the preparation and prosecution of Pope's benefits appeal. Given that this case involved not insubstantial questions of fact and developing law, this amount of hours is reasonable. The Court has also examined each of the entries in Pope's itemized list of hours expended, and finds these entries to be reasonable.

The EAJA provides for a $125 per hour cap on attorney's fees, which may be increased only where a court finds that "an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Pope's attorney seeks $190.28 per hour of attorney time for work performed in 2015, $191.70 per hour for work performed in 2016, and $75 per hour of legal assistant time expended. (Doc. 27 Ex. 1). The determination of whether an award above the statutory maximum is appropriate is left to the "sound discretion of the district court." *Begley v. Sec'y of Health & Human Servs.*, 966 F.2d 196, 199 (6th Cir. 1992). Courts place the burden of proving that the EAJA cap should be increased upon the plaintiff. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").

As noted above, the EAJA makes specific reference to "increase[s] in the cost of living," and attorneys regularly cite to the Consumer Price Index ("CPI"), which tracks increases in

12

consumer costs, to justify rates higher than that provided for in the EAJA. The Sixth Circuit addressed the interrelation of EAJA fees and the CPI in *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009). The court there held that a district court did not err by declining to grant an increase in the EAJA hourly rate where the attorney seeking fees "submitted only the Department of Labor's CPI, arguing that the rate of inflation supported an increase in fees." *Id*. The court merely noted that "this [was] not enough," without further explanation. *Id*.

In 2016 the Sixth Circuit returned to the interrelation of the EAJA and CPI in three decisions. In *Sakhawati v. Lynch*, 839 F.3d 476 (6th Cir. 2016) the court cited *Bryant* to reaffirm the proposition that "the Department of Labor's Consumer Price Index alone, indicating the rate of inflation, is not enough" to carry the plaintiff's burden in establishing an increase in the hourly EAJA rate.

In *Clark v. Comm'r of Soc. Sec.*, No. 16-5393, 2016 WL 7377326, at *2 (6th Cir. Nov. 29, 2016) the court addressed a case arising out of Kentucky, but where plaintiff's attorney resided in Syracuse, New York; the attorney provided only a "half-page calculation of her fees using the Midwest Urban CPI to reach an adjusted hourly rate of $176.13 per hour," and in the reply brief attached "a declaration concerning [the attorney's] experience and his non-contingent hourly rate in Syracuse, New York." The attorney made no effort to provide any "discussion, let alone evidence, of the rate that comparably experienced Social Security practitioners command in Bowling Green, Kentucky, save awards referenced in other cases in that district." *Id*. The court reviewed an extensive series of cases arising out of other circuits, and concluded that "these cases do not universally stand for the proposition that a district court must award the maximum amount possible once the statutory cap is increased to reflect the cost of living adjustment,

perhaps with reference to the CPI." *Id*. at *4. Despite concluding that "the CPI provides a reasonably accurate measure of the need for inflation adjustment to the statutory cap in most cases," the court reaffirmed that this information alone cannot satisfy 28 U.S.C. § 2412(d)(2)(A) insofar as it requires that the rate "shall be based upon prevailing market rates for the kind and quality of the services furnished." *Id*. at 4. Thus, despite recognizing that "the CPI provides a reasonably accurate measure of the need for inflation adjustment to the statutory cap in most cases," the Sixth Circuit nevertheless held that "a plaintiff must still produce evidence that the rate they request is in line with those rates prevailing in the community for similar services by lawyers of comparable skill and experience in order to justify the increase." *Id*. Therefore, "[e]vidence of rates outside of the relevant jurisdiction provide no evidence of the prevailing rates within a given community for attorneys of comparable skill, experience, and reputation." *Id*. at 2.

In *Coursey v. Comm'r of Soc. Sec.*, 843 F.3d 1095, 1098 (6th Cir. 2016) the Sixth Circuit further clarified that "[t]his court requires a plaintiff seeking an attorney's fee of greater than $125 per hour to show by competent evidence both that the cost of living justifies a higher rate and, as the statute itself requires, that the fee is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Bryant v. Commissioner of Social Security*, 578 F.3d 443, 450 (6th Cir. 2009). CPI alone does not "show whether the prevailing rate in the relevant community is higher than $125 per hour," and is therefore insufficient, by itself, to justify a rate above $125 per hour. *Id*.

The Sixth Circuit has consistently reaffirmed that the burden of justifying an increased rate of payment rests upon the plaintiff. *See, e.g.*, *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878,

881 (6th Cir. 2016); *Bryant*, 578 F.3d at 450. Yet the EAJA itself does not require this practice, and instead provides only that $125 per hour is the cap "unless the court determines that an increase" is justified. 28 U.S.C. § 2412(d)(2)(A).

In *Clark* the Sixth Circuit concluded that "there must be some understanding of the rates charged locally before a district court can adjust for cost of living or other factors." No. 16-5393, 2016 WL 7377326, at *4. It is not apparent whether the Sixth Circuit's use of an indefinite infinitive in the phrase "there must be," rather than more plainly stating that "plaintiff must present" such evidence, was intended to relieve plaintiffs from the burden of furnishing evidence supporting an increased rate. Yet, despite proffer of insufficient evidence in both *Coursey* and *Clark*, the district courts in those cases chose a rate of $140 per hour. More specifically, in *Coursey* the plaintiff did not supply any evidence of rates charged by practitioners of comparable skill in the district, whereas the Commissioner "cited recent rulings establishing that $140.00 per hour is a reasonable and customary rate for experienced social security practitioners in the Louisville metropolitan area which is in the Western District of Kentucky." *Coursey v. Colvin*, No. 1:15CV-00005-HBB, 2016 WL 1090622, at *3-4 (W.D. Ky. Mar. 18, 2016). Armed with the CPI rates provided by plaintiff and the information regarding practitioners in the jurisdiction provided by Commissioner, the district court concluded that "an award in excess of $125.00 per hour is appropriate due to an increase in the cost of living," and granted an award at a rate of $140 per hour. *Id.* The Sixth Circuit approved of that decision, finding that the district court did not commit an abuse of discretion "when it awarded an attorney's fee based on $140 per hour. The court, giving 'Coursey the benefit of the doubt,' properly relied on evidence—in the form of judicial findings in previous cases—that the prevailing market rate for similar services within

its venue was $140 per hour." *Coursey*, 843 F.3d 1095, 1099 (6th Cir. 2016) (quoting *Coursey*, No. 1:15CV-00005-HBB, 2016 WL 1090622, at *4)).

The district court and circuit courts in *Clark* followed a nearly identical path, granting $140 per hour on the basis of prior court decisions supplied by the Commissioner regarding the remuneration obtained by comparable practitioners in the jurisdiction, and relying on the plaintiff's evidence of an increased cost of living. *See Clark*, No. 1:15-CV-00015-HBB, 2016 WL 1045563, at *3 (W.D. Ky. Mar. 15, 2016), aff'd sub nom. *Clark v. Comm'r of Soc. Sec.*, 664 F. App'x 525 (6th Cir. 2016).

Pope's attorney supplies only two pieces of evidence that the EAJA rate should be increased: first, he asserts that his hourly rate for non-contingent work is $225, and that he expects to recoup a figure greater than that amount to account for "the risk of non-recovery involved in taking a case on a contingent fee basis." (Doc. 23 at 7). Second, he notes that the "9th circuit has calculated the EAJA rate (adjusted for increases in the cost of living) at $190.28 per [hour] in 2015 and $191.80 per hour in the first half of 2016" (*Id*.), though he cites no case law in support of this proposition. That Pope's attorney generally charges $225 per hour on non-contingent cases tells the Court nothing about the prevailing market rate for the services of similarly experienced attorneys in the area. *See Armstrong v. Comm'r of Soc. Sec.*, No. 10-12552, 2012 WL 917565, at *1 (E.D. Mich. Mar. 19, 2012). Likewise, evidence regarding the rate paid in the Ninth Circuit, which spans Arizona, California, Idaho, Montana, Nevada, Oregon, and Washington, provides no insight whatsoever into the rates paid in this district.[1] The rate paid in the Ninth Circuit was perhaps chosen because the cost of living in significantly greater in

---

[1] Even if the rate paid in these areas had some relevance to the rate appropriate in this one, Pope's attorney provides no citation to case law or other documentation demonstrating that this rate has been applied or adopted.

locations such as Los Angeles and Seattle than in Detroit, but these rates are wholly irrelevant to the rate obtained by practitioners in this jurisdiction.

While *Blum*, 465 U.S. at 896 n.11 clearly establishes that the plaintiff bears the burden of demonstrating that any fee above $125 per hour is justified, the Sixth Circuit's conclusion in *Coursey* and *Clark* that district courts did not abuse their discretion by ordering higher fees despite the plaintiffs having shirked that burden demonstrates that the rule is prudential rather than jurisdictional. Yet unlike in *Coursey* and *Clark*, the Commissioner in this case opposes payment of EAJA fees at all, and has not addressed the appropriate rate of payment. There is therefore no evidence in the record whatsoever regarding the rates obtained by similarly experienced practitioners in this jurisdiction, and thus no evidence to justify a rate higher than the $125 per hour provided for in the EAJA.

*Coursey* and *Clark* appear to suggest that evidence regarding the rate of similarly experienced practitioners in this jurisdiction need not come from the plaintiff, and could instead be supplied by the Commissioner, or perhaps even the Court's own research, without abusing the Court's discretion. However, particularly where no party has entered such evidence into the record, the undersigned is unwilling to depart from well-established Supreme Court and Sixth Circuit precedent holding that it is the plaintiff's burden to demonstrate the appropriateness of a fee in excess of $125 hourly. I see no reason to decide this case differently from *Hammerbacher v. Comm'r of Soc. Sec.*, No. 13-CV-15170, 2016 WL 3344390, at *4 (E.D. Mich. Apr. 8, 2016), report and recommendation adopted, No. 13-CV-15170, 2016 WL 3197392 (E.D. Mich. June 9, 2016), where I recommended granting fees at the $125 per hour rate because the plaintiff likewise failed to provide evidence regarding the rates obtained by similarly experienced

practitioners in this jurisdiction, and the Commissioner likewise did not provide briefing regarding the appropriate fee to be paid.

The Court is aware that $125 today is a substantially less valuable sum than it was in 1996, when the EAJA rate was last amended, and would prefer to grant payment of the EAJA fee at a rate which accounts for inflation. Yet the standard is dictated by the EAJA, and that statute does not provide for automatic increases in the rate of fees. If Congress intended for fees under the EAJA to automatically adjust for inflation, it knew how to accomplish that task. *See Boehner v. Anderson*, 809 F. Supp. 138, 140 (D. D.C. 1992), aff'd, 30 F.3d 156 (D.C. Cir. 1994) ("Congress first provided for automatic annual adjustments to its Members' pay in the Executive Salary Cost-of-Living Act of 1975, Pub. L. 94–82."). Barring amendment of the EAJA or a reinterpretation of that statute by the Sixth Circuit, this Court is bound to conclude that a requested for attorney's fees at a rate above $125 per hour which cites nothing more than the CPI (particularly the CPI as applied in an entirely different circuit) is insufficient and should be denied. Because Pope's attorney has failed to properly support his proposed hourly rate for EAJA fees, the Court finds that payment at the standard statutory rate of $125 per hour is appropriate.

Pope's attorney alleges that he spent 18.85 hours of attorney time on this case; multiplying that figure by $125 produces $2356.25. He further alleges that non-attorney staff worked on this case for 1.75 hours at a rate of $75 per hour, the product of which is $131.25. Legal assistant fees are little disputed in the case law, most likely because they generally compose a small portion of the fees requested and the payment per hour is low enough to duck substantial scrutiny; in any case, $75 per hour is a reasonable rate for staff fees. *See, e.g.*, *Acosta v. Comm'r of Soc. Sec.*, No. 14-10212, 2016 WL 8094540, at *8 (E.D. Mich. Nov. 17, 2016) (finding that a rate of

between $50 and $75 per hour is reasonable for legal assistant time), report and recommendation adopted, No. 14-10212, 2017 WL 372000 (E.D. Mich. Jan. 26, 2017); *Walker v. Colvin*, No. 12-11175, 2014 WL 2587706, at *2 (E.D. Mich. June 10, 2014) (granting $75 per hour for legal assistant time where that rate was undisputed); *Gay v. Colvin*, No. 11-CV-10771, 2013 WL 4604177, at *4 (E.D. Mich. Aug. 29, 2013) (granting $75 per hour for  where that rate was suggested by the Commissioner), aff'd (Aug. 7, 2014). Adding these figures together produces a bottom line number of $2487.50.

Finally, the Court must determine whether the EAJA fees should be paid to Pope herself, or to Pope's counsel. EAJA fees are typically paid directly to plaintiffs. *See Astrue v. Ratliff*, 560 U.S. 586 (2010). Here, however, Pope has assigned her EAJA fees to her attorney in partial satisfaction of their contingency agreement. (Doc. 23 at 10-11). This arrangement is permissible, and similar contracts have been regularly enforced by courts in this district. *See Payne v. Comm'r of Soc. Sec.*, No. 13-CV-13561, 2015 WL 5212048, at *3 (E.D. Mich. Aug. 31, 2015); *Prieur v. Comm'r of Soc. Sec.*, No. 13-CV-12409, 2015 WL 143922, at *3 (E.D. Mich. Jan. 12, 2015). Consequently, the EAJA fee should be paid directly to Pope's attorney, Jacob Bender, rather than to Pope.

### C.      Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Pope's motion for attorney's fees (Doc. 23) be **GRANTED IN PART AND DENIED IN PART**, such that Pope's attorney be awarded $2487.50 in fees under the EAJA.

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 3, 2017                    S/ PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge

20

**<u>CERTIFICATION</u>**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 3, 2017                                  By <u>s/Kristen Castaneda</u>
                                                     Case Manager